Justice Stevens,
with whom Justice Ginsbueg joins, concurring in part and dissenting in part.
In New Jersey v. T. L. O., 469 U. S. 325 (1985), the Court established a two-step inquiry for determining the reasonableness of a school official’s decision to search a student. First, the Court explained, the search must be “ ‘justified at its inception’ ” by the presence of “reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school.” Id., at 342. Second, the search must be “permissible in its scope,” which is achieved “when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.” Ibid. (emphasis added).
Nothing the Court decides today alters this basic framework. It simply applies T. L. O. to declare unconstitutional *380 a strip search of a 13-year-old honors student that was based on a groundless suspicion that she might be hiding medicine in her underwear. This is, in essence, a case in which clearly established law meets clearly outrageous conduct. I have long believed that “ ‘[i]t does not require a constitutional scholar to conclude that a nude search of a 13-year-old child is an invasion of constitutional rights of some magnitude.’” Id., at 382, n. 25 (opinion concurring in part and dissenting in part) (quoting Doe v. Renfrow, 631 F. 2d 91, 92-93 (CA7 1980)). The strip search of Savana Redding in this case was both more intrusive and less justified than the search of the student’s purse in T. L. O. Therefore, while I join Parts I — III of the Court’s opinion, I disagree with its decision to extend qualified immunity to the school official who authorized this unconstitutional search.
The Court reaches a contrary conclusion about qualified immunity based on the fact that various Courts of Appeals have adopted seemingly divergent views about T L. O.’s application to strip searches. Ante, at 377-378. But the clarity of a well-established right should not depend on whether jurists have misread our precedents. And while our cases have previously noted the “divergence of views” among courts in deciding whether to extend qualified immunity, e. g., Pearson v. Callahan, 555 U. S. 223, 245 (2009) (noting the unsettled constitutionality of the so-called “eonsentonce-removed” doctrine); Wilson v. Layne, 526 U. S. 603, 618 (1999) (considering conflicting views on the constitutionality of law enforcement’s practice of allowing the media to enter a private home to observe and film attempted arrests), we have relied on that consideration only to spare officials from having “‘to predict the future course of constitutional law,’” id., at 617 (quoting Procunier v. Navarette, 434 U. S. 555, 562 (1978); emphasis added). In this case, by contrast, we chart no new constitutional path. We merely decide whether the decision to strip search Savana Redding, on these facts, was *381 prohibited under T L. O. Our conclusion leaves the boundaries of the law undisturbed.*
The Court of Appeals properly rejected the school official’s qualified immunity defense, and I would affirm that court’s judgment in its entirety.

In fact, in T. L. O. we cited with approval a Ninth Circuit case, Bilbrey v. Brown, 738 F. 2d 1462 (1984), which held that a strip search performed under similar circumstances violated the Constitution. 469 U. S., at 332, n. 2; id., at 341, and n. 6 (adopting Bilbrey’s reasonable suspicion standard).